## THE TAMAHA.
### THE F. B. DALZELL.
### THE FLORENCE.

(District Court, E. D. New York. December 5, 1919.)

1. WHARVES ⊱⊸21—TUG NOT NEGLIGENT IN STRETCHING HAWSER ACROSS OPEN SLIP.

Where a tug, under orders, drew a vessel out of a dry dock, stretched a hawser from the vessel across an open slip to a pier, suggested to the vessel's officer that a lantern be placed at the steamer's stern after dark, and then left, *held*, that the tug was not negligent in either stretching the line or in failing to remain to watch it.

2. WHARVES ⊱⊸21—STEAMER PRIMARILY AND PIER ALSO LIABLE FOR INJURIES SUSTAINED WHEN TUG RAN INTO HAWSER ACROSS OPEN SLIP.

Where a hawser, stretched from a vessel at a dry dock across an open slip to a pier, caused injury to libelant, engineer on a tug which endeavored to enter the slip after dark, *held*, that the steamer was primarily responsible, but that the dry dock company, which was apparently aware of the condition and knew that the slip was frequently used by other vessels, was also liable.

3. WHARVES ⊱⊸21—EVIDENCE INSUFFICIENT TO SHOW INJURY TO LIBELANT WHEN HIS TUG RAN INTO A HAWSER.

The testimony of an engineer on a tug that he had been knocked down by something and injured when the tug ran against a hawser stretched from a steamer across an open slip to a pier *held* insufficient to establish that any injuries were received in the manner claimed, in view of fact that persons inspecting the engine room immediately after the accident found no indications that the room had been affected by the accident, and when the condition claimed as injury might have resulted from disease.

In Admiralty. Libel by Walter A. Gully against the steamship Tamaha; the F. B. Dalzell, James Shewan & Sons, Incorporated, and the tug Florence, impleaded. Libel dismissed.

Harry E. Shirk, of Brooklyn, N. Y., for libelant.

Kirlin, Woolsey & Hickox and L. De Grove Potter, all of New York City, for the Tamaha.

Carter & Carter and P. S. Carter, all of New York City, for the F. B. Dalzell.

Foley & Martin and J. A. Martin, all of New York City, for James Shewan & Sons, Inc.

CHATFIELD, District Judge. The libelant was an engineer upon the tug Florence, which attempted to enter a slip adjoining the pier used to hold the shop and offices of the Shewan Dry Dock Company upon the evening of July 6, 1916. In so doing the tug struck a 7-inch hawser which had been stretched from the stern of the steamer Tamaha across the slip to the pier upon the south. No lantern had been placed on this hawser, or at the stern of the ship, to indicate danger. The pilothouse of the tug, its smokestack, and the steampipe leading to the whistle were sheered off just above the roof of the main deckhouse. The captain of the tug was in the pilothouse, but was saved from serious injury by the framework of the wheel, which was crushed down

⊱⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

over him. The libelant was thrown to the floor in his engineroom, and testifies that he was struck upon the left side of the head, or upon the left ear, by some object which knocked him down.

Surveyors who examined the boat immediately after the accident found absolutely nothing broken or misplaced inside of the engineroom,,except that the bell wires were pulled loose and a strip of molding pulled out of place where these wires were torn out.

The hawser in question had been placed across the slip after the steamer had been drawn out of the dry dock in order to allow another vessel of the same line to be put in the dry dock for immediate repairs. The Tamaha was placed at the end of the Shewan pier, but angling across, so that her bow was held by lines to some structure inside of Shewan's yard. Her stern thus projected partly into the slip in question, and the Dalzell tug stretched the hawser, at the direction of some one either on the Shewan pier or on the ship, and with the approval of the ship's officers. The captain of the tug called the attention of the Tamaha's officer to the line, and indicated that a lantern should be placed at the stern of the steamer; but his suggestion was not accepted by this officer.

[1] The Dalzell tug left before dark, and I see no negligence in either stretching the line or in failing to remain to watch the line, so far as the Dalzell tug was concerned. The negligence consisted in the maintenance of this line across an open slip in the dark without some light to indicate its presence. Responsibility for that must rest upon the vessel, unless that responsibility was shared or assumed by the owners of the dry dock. The petition should therefore be dismissed by which the F. P. Dalzell was brought into the case.

[2] As between the Tamaha and the Shewan Company, the Tamaha was primarily responsible for the conditions. The Shewan Company was apparently aware of these conditions, and knew that the hawser was blocking the adjoining slip. They also knew that this slip was frequently used by vessels which would not know of the presence of the hawser. The steamship, therefore, and the Shewan Company, must be held at fault for the situation which existed and the carelessness which resulted in the injuries upon the Florence.

[3] But another issue in this case has been raised by the claimant and respondent with respect to the injuries alleged by the libelant to have been received on this occasion. The libelant suffered the loss of his left leg some 35 years ago, when he was a small boy. He complains of pains at times in his shoulder, which his own doctors could trace to no injury, unless it be from the strain or discomfort of using a crutch under his left arm. He complains of trouble in hearing, and an examination by various doctors has disclosed that his hearing is somewhat impaired.

Examination in open court showed that his ability to hear was affected in great degree by his idea of what the doctors were doing in the way of a test. The libelant seemed to be attempting honestly to report his perceptions and sensations during these tests; but it was apparent that he said he did not hear certain sounds of which he must have

been in some way conscious, and which were much louder and more easily distinguishable than the voice, which he quickly responded to, at the same distance.

His loss of hearing is much less than he believes it to be, even if he has not intentionally misled the doctors during the examinations.

The libelant has failed to furnish a preponderance of credible testimony indicating that he received any injury at the time, from which the deafness has resulted, or that the deafness is the result of any blow received at the time of collision with the hawser.

The captain of the vessel testifies that the libelant complained of no injury and was around the boat within a few moments. The libelant testifies that it was some half an hour before he was able to get out around the deck, and during this time he pulled most of the fire under the boiler.

The captain of the boat seems to have been in a better position to estimate what was going on, as he retained command and control of his boat and was observing the whereabouts and condition of his crew. While the libelant may be excused for not appreciating the situation and the length of time during which steam was escaping from the open steam pipe outside of the engine house, while he was endeavoring to pull his fires and to shut off any steam that might be escaping, nevertheless his condition was not such that it is persuasive evidence of his having received any severe blow upon the head. The hawser which came in contact with the tug was not broken. The eardrums of the libelant were not ruptured, and the testimony leads the court to believe that his impaired hearing is the result of some other internal trouble, which manifested itself either after this accident, or which was first noticed and observed when the libelant's attention was called to what might have happened from the accident, and that he thereby attributed to the accident in question effects with which it had nothing to do as a cause.

The libel will be dismissed, but without costs.